IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WIREMED TECH LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1066 (MN) |
| | ) |
| ADOBE INC., | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

Stamatios Stamoulis, STAMOULIS & WEINBLATT LLC, Wilmington, DE; David R. Bennett, Direction IP Law, Chicago, IL – Attorneys for Plaintiff

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE – Attorney for Defendant

May 24, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Adobe Inc.'s ("Defendant" or "Adobe") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Western District of Washington. (D.I. 11). Plaintiff Wiremed Tech LLC ("Plaintiff" or "Wiremed") opposes transfer. (D.I. 18). For the reasons set forth below, Adobe's motion is denied.

## I. BACKGROUND

Wiremed is a Texas limited liability company with a principal place of business in Texas. (D.I. 1 ¶ 1). Adobe is a Delaware corporation with a principal place of business in California. (*Id.* ¶ 2). Wiremed initiated this action on July 18, 2018, alleging that Adobe's Character Animator infringes U.S. Patent Nos. 6,331,864 and 6,944,825. (*Id.* ¶¶ 28, 42). Adobe's Character Animator "is an animation application that combines live motion-capture with a multi-track recording system to control layered 2D puppets drawn in Adobe Photoshop or Illustrator." (D.I. 13 ¶ 3). Adobe moves to transfer this action to the Western District of Washington where the Character Animator application was primarily designed and developed by a team based in Adobe's Seattle, Washington office. (*Id.* ¶ 4).

## II. LEGAL STANDARD

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses,'" *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

1

The Third Circuit has recognized that:

> "[i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Id.* at 879 (citations omitted). The public interests include:

> "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Moreover, though courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," *Jumara*, 55 F.3d at 883, the Third Circuit has held that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

## III. ANALYSIS

As an initial matter, the parties dispute whether this case could have originally been brought in the Western District of Washington. Patent infringement actions "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Because Adobe is a Delaware corporation, it resides only in Delaware for purposes of the patent-venue statute. *See TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Thus, for the case to be transferred to the Western District of Washington, Adobe must have committed acts of infringement there and have a regular and established place of business within the district.

It is undisputed that Adobe has a regular and established place of business in the Western District of Washington.[1] Wiremed, however, asserts that Adobe has not shown that it has committed acts of infringement within the Western District of Washington because Adobe denied selling its Character Animator nationwide in its Answer. (D.I. 18 at 8 (citing D.I. 10 ¶ 28)). In response, Adobe argues that it admitted "selling Character Animator, an application offered nation-wide, and only denied that it infringes the patents-in-suit." (D.I. 21 at 1 (citing D.I. 10 ¶ 28)). Adobe also contends that the Character Animator was made in Seattle. (*See id.*).

Given that Wiremed has accused Adobe of infringement nationwide (D.I. 1 ¶¶ 28, 42) and Adobe did not deny that "it makes and sells a software product called Character Animator" (D.I. 10 ¶¶ 28, 42), which Adobe has admitted is available nationwide and is, at least, partially made in Seattle (D.I. 21 at 1), the Court finds that Adobe has "committed acts of infringement" for the

---

[1] For a corporation to have a regular and established place of business, three requirements must be met: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Adobe's Seattle, Washington office meets all three of these requirements. (*See* D.I. 13 ¶¶ 2, 4-6).

purposes of § 1400(b). Because the Court has determined that this action could have been brought in the Western District of Washington, the Court now considers the private and public factors set forth in *Jumara* in connection with its transfer inquiry.

1. Plaintiff's forum preference

This factor weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Adobe argues that Wiremed's choice of forum should be "entitled to minimal deference" because it is a Texas limited liability company, with a principal place of business in Texas, and its "only connection to Delaware is that it brought this litigation here." (D.I. 12 at 7-8). This Court has previously noted that it is "'difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere'" and that "'[n]either *Shutte* nor *Jumara* hold or even intimate that a plaintiff's motive in selecting its forum choice is relevant for § 1404(a) purposes.'" *ANI Pharm., Inc. v. Method Pharm., LLC*, No. 17-1097 (MN), 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *VLSI Tech. LLC, v. Intel Corp.*, No. 18-966 (CFC), 2018 WL 5342650, at *2, 5-6 (D. Del. Oct. 29, 2018)). Likewise, here, where Adobe has not challenged the validity of venue or jurisdiction in Delaware, the Court is not convinced that Wiremed's lack of a

4

connection to Delaware should dictate that Wiremed's forum choice should receive less deference. Wiremed's choice is entitled to paramount consideration.

        2.        Defendant's forum preference

This factor favors transfer. Adobe's interest in having this case transferred to the Western District of Washington is clear.

        3.        Whether the claims arose elsewhere

This factor is neutral. Adobe contends this factor weighs in favor of transfer because the accused product was designed and developed primarily in Adobe's Seattle office. (*See* D.I. 12 at 8). This fact weighs in favor of transfer. *See In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012) ("[T]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." (quotation marks and citation omitted) (alterations in original)). But design and development of the accused product also occurred in California and Minnesota, where other members of Adobe's Character Animator team are based. (*See* D.I. 13 ¶ 5). Therefore, the claims also arose in California and Minnesota.

Moreover, patent claims arise wherever alleged infringement has occurred. *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (citing 35 U.S.C. § 271(a); *Red Wing Show Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). Because Wiremed has accused Adobe of patent infringement throughout the United States, including Delaware (D.I. 1 ¶¶ 28, 42), it could be said that Wiremed's claims also arose in Delaware. Thus, this factor is neutral.

### 4. Convenience of the parties as indicated by their relative physical and financial condition

This factor weighs slightly against transfer. Adobe argues that "[t]ransferring this case to the Western District of Washington would significantly reduce the logistical and operation costs for Adobe." (D.I. 12 at 9). Adobe's size, financial resources, and status as a Delaware corporation, however, negate any assertion that it is actually inconvenienced by having to litigate in Delaware. As a Delaware corporation with global operations, Adobe can demonstrate "inconvenience" pursuant to § 1404(a) only if it can "prove that litigating in Delaware would impose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (internal quotation marks and citation omitted) (alteration in original); *see also Universal Secure Registry, LLC v. Apple, Inc.*, No. 17-585 (CFC) (SRF), 2018 WL 4502062, at *3 (D. Del. Sept. 19, 2018) ("When a party accept[s] the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden" (internal quotation marks and citation omitted) (alteration in original)).

Here, Adobe has not identified any significant inconvenience – let alone a unique or unusual burden – that it would incur as a party to litigation in this Court. Although Adobe asserts that if the case stays in Delaware, "Adobe and its witnesses would bear significant additional costs, burdens and disruptions associated with flying across the country . . . and being separated from families and work responsibilities for days or weeks on end" for trial (D.I. 12 at 10), the Court is not convinced that this would amount to a unique or unusual burden, given Adobe's size and the ability of its party witnesses to work remotely if need be.

As for Wiremed, Adobe contends that "transferring this case would have little, if any, impact on Wiremed's logistical and operational costs" because it is located in Texas and will have

to travel regardless of where the case is litigated. (*Id.*). The Court disagrees. Wiremed "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is most convenient for it, for whatever its reasons." *Tessera, Inc. v. Sony Elecs. Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012). Moreover, although the Court is unable to determine the exact size of Wiremed from the record, it is able to discern that it is much smaller than Adobe. (D.I. 12 at 1; D.I. 18 at 12). Therefore, in balancing the convenience of litigating in the Western District of Washington for Adobe with (1) Adobe's status a Delaware corporation with a global presence, and (2) the convenience of litigating in the District of Delaware for Wiremed and its status as a small company, this factor weighs against transfer. But, given the fact that Wiremed will have to travel regardless of where this case is litigated, this factor will be given only slight weight.

5. <u>Convenience of the witnesses</u>

This factor slightly favors transfer. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). Moreover, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).

Here, Adobe identifies several third-party witnesses located in Seattle, Washington. (D.I. 12 at 11-12). Of these witnesses, two are the named inventors of the patents-in-suit. (*Id.* at 11 (citing D.I. 13 ¶¶ 9-13, Exs. 8-12)). A third witness is the founder and CEO of Onadime, Inc., the original assignee of the patents-in-suit. (*Id.* at 11 (citing D.I. 13 ¶¶ 11, 19-20, Exs. 18-19)).

The patents-in-suit's prosecuting attorneys are also near or in Seattle. (*Id.* at 12 (citing D.I. 13 ¶¶ 14-17, Exs. 13-16)). Given that Wiremed pleaded in its Complaint that Onadime, Inc.'s product "'implemented the method' claimed in the patents," Adobe asserts that "[t]estimony from [these] individuals [] should bear on validity, prior art, damages, marking, and sundry other patent-specific issues." (D.I. 21 at 7).

Although nothing in Adobe's papers or submitted declarations suggests that these third-party witnesses would not be willing to testify at trial, because neither party has identified any third-party witnesses in Delaware and Adobe has identified why it would want to call these witnesses at trial, this factor favors transfer, albeit only slightly.

### 6. Location of books and records

This factor is neutral. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Here, although Adobe argues that "most records and documents related to the design and development of [the accused product]" are located in its Seattle office (D.I. 12 at 12), it has not identified any evidence that could not be produced in this district. Nor has Adobe offered any showing that any "documentary evidence relevant to this action is found exclusively" in the Western District of Washington. *See VLSI*, 2018 WL 5342650, at *7. Therefore, this factor is neutral.

### 7. Enforceability of the judgment

This factor is neutral, as judgments from this district and the Western District of Washington would be equally enforceable.

### 8. Practical considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Here, Adobe argues that "transferring this case [] would make trial far easier and far less expensive, given the overwhelming nexus of both party and non-party witnesses, events, and sources of proof in the Seattle area." (D.I. 12 at 14). Wiremed responds that transfer will "significantly increase[] [the] cost of the case" for parties and witnesses outside of Seattle because "Seattle is substantially more expensive than Wilmington" in terms of meals and lodging. (D.I. 18 at 14). Because both parties' contentions "have been raised, in [some] way, as to other *Jumara* factors, [] the Court will not double-count them here." *Elm 3DS Innovations LLC v. SK Hynix Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015). Therefore, given that there is no broader public benefit to this case proceeding in this Court versus the Western District of Washington, this factor is neutral. *W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

### 9. Relative administrative difficulty due to court congestion

This factor weighs slightly in favor of transfer. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[2] as of December 31, 2018, which indicate that the median length of time between filing and trial for civil cases is 28.7 months in the District of Delaware and 19.4 months in the Western District of Washington. The December 31, 2018 profile also indicates that District of Delaware has a higher amount of pending cases per judgeship (596 cases) and

---

[2] The December 2018 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf.

9

percentage of civil cases over three (3) years old (9.6%) than the Western District of Washington (431 cases and 3.7%, respectively).

Although "[t]his District's large caseload has not, in the past, been a sufficient justification for transfer[,] . . . increased times from filing to . . . trial [is an] important factor[] that do[es] influence the court's calculus." *W.R. Berkley*, 2017 WL 4081871, at *5 (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759-60 (D. Del. 2012)). Because there is a difference of nine months between the two districts' time between filing and trial, this factor weighs slightly in favor of transfer. *See Textron Innovations, Inc. v. Toro Co.*, No. 05-486 (GMS), 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh *strongly* in favor of a transfer." (emphasis added)).

10. <u>Local interest in deciding local controversies at home</u>

This factor is neutral. First, "[p]atent issues do not give rise to a local controversy or implicate local interests." *TriStata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Second, Adobe, a multinational company with thousands of employees worldwide, is not a "local" company in the Western District of Washington. Moreover, its dispute with Wiremed, which does not reside in Washington, is not a "local controversy" in the Western District. *See Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-1712 (CFC), 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018) (finding a local controversy did not exist in the proposed transferee district when both parties did not reside there). Thus, this factor is neutral.

11. <u>Public policies of the fora</u>

The parties agree that this factor is neutral. (D.I. 12 at 16; D.I. 18 at 14).

12. Familiarity of the trial judge with the applicable state law in diversity cases

Wiremed's claims arise under federal patent laws. Therefore, the familiarity of the respective districts with state law is not applicable and this factor is neutral.

13. Balancing the private and public factors

A balancing of the twelve *Jumara* factors advises the Court that this case should not be transferred to the Western District of Washington. Seven factors are neutral, two factors weigh against transfer, and three factors weigh in favor of transfer. Looking at the factors as a whole and treating Wiremed's choice of this forum as a paramount consideration, Adobe has failed to meet its heavy burden of showing that the *Jumara* factors weigh strongly in favor of transfer.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Adobe's motion to transfer the case to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a). An appropriate order will issue.